IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHERRY J. BAILEY                :

    v.                         :   Civil Action No. DKC 13-0144

                                           :

DEUTSCHE BANK TRUST COMPANY,
et al.                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are motions to dismiss filed by Defendants Deutsche Bank Trust Company ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen") (ECF No. 13), Saxon Mortgage Services, Inc. ("Saxon") (ECF No. 14), and Novation Companies, Inc., f/k/a NovaStar Financial, Inc. ("Novation") (ECF No. 19). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Novation will be dismissed pursuant to the doctrine of fraudulent joinder; its motion to dismiss for failure to state a claim will be denied as moot; and the motions to dismiss filed by the remaining defendants will be granted.

**I.  Background**

Plaintiff Sherry J. Bailey commenced this action on or about November 15, 2012, by filing a complaint in the Circuit Court for Prince George's County, Maryland. The complaint

relates to a parcel of real property in Oxon Hill, Maryland, that Plaintiff purchased in 2006 ("the Property"). Seeking a loan for the entire purchase amount, Plaintiff "contacted [Novation] to discuss financing" and "completed [a] loan application . . . indicating that the Property was being purchased for investment purposes." (ECF No. 2 ¶ 10). Plaintiff was unaware at the time that "100 percent loans were only available for properties being purchased as residences by the buyer"; thus, she "did not qualify . . . since she was buying for investment purposes." (*Id.* at ¶ 12). The requested loan was approved, however, because Novation allegedly "changed [Plaintiff's] loan application to reflect that the Property was being purchased as [her] principal residence." (*Id.* at ¶ 13). Plaintiff noticed this alteration at closing and "changed the application back to investment," but, "[a]t some time after closing and unbeknownst to [P]laintiff, [Novation] changed the application back to residential use." (*Id.* at ¶¶ 14, 15).[1]

In 2008, Plaintiff fell behind on her mortgage payments and defaulted on the loan. On December 21, 2009, Novation transferred the defaulted loan to "Deutsche Bank as trustee for a securitized trust." (*Id.* at ¶ 16). Saxon, the initial

---

[1] At another point in the complaint, Plaintiff asserts that she objected to the initial alteration at closing and was told by a Novation representative that it "was unimportant and that she should go ahead with the transaction." (ECF No. 2 ¶ 28).

servicer, commenced a foreclosure action in January 2010. On or about May 20, 2010, "Deutsche Bank appointed Ocwen as the loan service[r.]" (*Id*. at ¶ 17). Plaintiff asserts that she "contacted the mortgage servicers, Saxon and Ocwen, . . . about her [financial] problems, and she was advised by both that they would work with her to modify the loan so that she would be able to retain the Property and it would not be foreclosed upon." (*Id*. at ¶ 19). "As a result of th[o]se assurances, [P]laintiff invested over $60,000 . . . to improve the Property." (*Id*.). Nevertheless, the loan was never modified, the foreclosure action proceeded, and the Property was sold at a foreclosure sale on October 8, 2010.

As to Novation and Deutsche Bank, Plaintiff alleges fraud related to the alteration of her loan application. She further alleges negligent misrepresentation against Deutsche Bank, Saxon, and Ocwen based on the servicers' false assurances concerning a loan modification. Plaintiff seeks an award of compensatory damages in the amount of $300,000.00.

Deutsche Bank and Ocwen removed to this court on January 14, 2013, citing diversity of citizenship as the jurisdictional basis. The removal notice indicates that Plaintiff is a citizen of Maryland, that Deutsche Bank is a New York corporation, and that the sole member of Ocwen, a limited liability company, is a Delaware corporation with its principal place of business in

Florida. The notice further reflects that Saxon, a Texas corporation, consented to removal and that Novation, a Maryland corporation, was "fraudulently joined." (ECF No. 1, at 3).

On January 18, counsel for Novation entered an appearance, filed a disclosure statement pursuant to Local Rule 103.3, and requested an extension of time to respond to the complaint, asserting that he had "contacted Plaintiff's counsel to explain that . . . [Novation] did not originate the loan at issue in this case" and that "[a] brief extension of time would allow the parties additional time to look into this matter and confirm that the correct entities have been named" (ECF No. 10 ¶ 7).

On January 22, Deutsche Bank and Ocwen filed a joint motion to dismiss for failure to state a claim upon which relief may be granted. (ECF No. 13). Saxon filed a similar motion the following day. (ECF No. 14). Approximately one week later, Novation filed a consent to removal – advising that its consent was "without prejudice to its Motion to Dismiss for improper joinder" (ECF No. 18) – along with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and (9)(b) (ECF Nos. 19, 20).[2] Plaintiff opposed each of these motions (ECF Nos. 23-25) and Defendants filed replies (ECF Nos. 26-28).

---

[2] Novation separately filed its motion (ECF No. 19) and memorandum (ECF No. 20).

## II. Fraudulent Joinder

Although this case was removed on the basis of diversity of citizenship, the parties are not fully diverse, as both Plaintiff and Novation are Maryland citizens. Thus, jurisdiction could only be proper if Novation was "fraudulently joined."

As Judge Nickerson recently explained in *Barlow v. John Crane Houdaille, Inc.*, Civ. No. WMN-12-1780, 2012 WL 538883, at *2 (D.Md. Nov. 1, 2012):

> The doctrine of fraudulent joinder is an exception to the complete diversity rule normally required for a federal court to exercise diversity jurisdiction. *Bendy v. C.B. Fleet Co.*, Civ. No. CCB–10–3385, 2011 WL 1161733, *3 (D.Md. Mar. 28, 2011). Defendants opposing remand, when removal was based on the doctrine of fraudulent joinder, carry a very heavy burden. *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999). The defendant must show either that (1) there has been outright fraud in the plaintiff's pleading, or (2) "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Id*. (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). In considering whether a party has been fraudulently joined, the court is not confined to the allegations of the complaint, but may consider the entire record. *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990).

(Internal footnote omitted).

Where, as here, there is no allegation of outright fraud in the challenged pleading, the removing defendants must conclusively show that there is no possibility that the plaintiff could establish a cause of action against the alleged fraudulently joined defendant.

> Courts around the country have devoted considerable time and energy to explaining that "no possibility" does actually mean, no possibility. *See e.g., Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999) (a plaintiff need only show "a slight possibility of a right to relief" or that he or she has a "glimmer of hope" of succeeding on claim); *In re Maine Asbestos Cases*, 44 F.Supp.2d 368 (D.Maine 1999) (court must be able to say "to a legal certainty" plaintiff will be unsuccessful); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983) ("The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court."); *see also* 13F Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3641.1 (3d ed. 2009) (and cases cited therein).

*Barlow*, 2012 WL 5388883, at *2 n.1.

Defendants have made the requisite showing here. In response to Novation's motion to dismiss, Plaintiff has conceded that Novation was not a party to the underlying loan. Rather, "the loan in question was made by . . . Novastar Mortgage," a subsidiary of Novation. (ECF No. 25-1, at 6). Nevertheless, Plaintiff asserts, "it is too early in the process for a decision to be made on whether the parent has any liability for

6

the acts of its subsidiary." (*Id.*). She further suggests that because the Maryland State Department of Assessment and Taxation reports that "Novastar Mortgage's standing in Maryland has been forfeited[,] . . . the parent may be liable for its acts." (*Id.*).

The problem, of course, is that the complaint does not so much as mention "Novastar Mortgage," nor does it identify Novation as a parent corporation allegedly liable for the tortious conduct of its subsidiary. Rather, it seeks to hold Novation directly liable for alleged tortious conduct in a transaction in which, Plaintiff now acknowledges, it was not involved.

Judge Hollander's recent opinion in *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, --- F.Supp.2d ----, 2013 WL 932525 (D.Md. Mar. 11, 2013), is instructive. In dismissing a parent corporation based on the alleged fraudulent conduct of its subsidiary, the court explained:

> The Complaint does not allege facts that, even if true, would establish that PennyMac Trust is liable for the conduct of PennyMac Holdings. Plaintiff offers only conclusory assertions as to control allegedly exerted by PennyMac Trust over PennyMac Holdings. For example, plaintiff does not allege that PennyMac Trust itself committed, inspired, or participated in the wrongs alleged. Moreover, plaintiff does not claim that PennyMac Trust held an interest in any mortgage debt, let alone plaintiff's mortgage. And, plaintiff does not assert

facts showing that PennyMac Trust communicated with or serviced plaintiff's debt payments. *See Antigua Condominium Ass'n v. Melba Invs. Atl., Inc.*, 307 Md. 700, 735, 517 A.2d 75, 93 (1986) ("The Plaintiffs do not allege any ground of [the parent[] corporation's] liability to them which is independent of [the subsidiary's] alleged liability to them. The entire thrust of the allegations against [the parent corporation] is an attempt to reach [it] through piercing the corporate veil of [the subsidiary]."). Nor is there a claim that the parent and subsidiary commingled funds or assets, or that the parent misused funds of the subsidiary, or otherwise disregarded the corporate structure. *See Cancun Adventure [Tours, Inc. v. Underwater Designer Co.*], 862 F.2d [1044,] 1047–48 [(4th Cir. 1988)].

When a plaintiff seeks to pierce the corporate veil, the complaint must offer more than general and conclusory allegations of fraud, undue control exercised by a parent over its subsidiary, or paramount equity. *Antigua*, 307 Md. at 736, 517 A.2d at 93. To justify veil piercing on the basis of fraud, for example, the plaintiff "would have to show that [the parent's] use of [the subsidiary] worked a fraud against [her]." *Id*. at 735, 517 A.2d at 93 (emphasis added). As the Maryland Court of Appeals explained, "[a] plaintiff must allege facts which indicate fraud or from which fraud is necessarily implied." *Id*. at 736, 517 A.2d at 93.

*Ademiluyi*, 2013 WL 932525, at *9-10.

Here, Plaintiff presents a much less compelling case for derivative liability than the plaintiff in *Ademiluyi*, as her complaint does not even hint at any theory other than direct liability, let alone provide a basis for corporate veil

piercing.  Indeed, Novastar Mortgage is not named as a defendant and Plaintiff has not sought leave to add that party, even though, under the theory she now espouses, it would seem to be indispensable.  *See Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D.Del. 2001) ("when a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19") (citing *Polanco v. H.B. Fuller Co.*, 941 F.Supp. 1512, 1520-22 (D.Minn. 1996) (collecting cases holding that subsidiary is an indispensable party)).

The instant record conclusively establishes that Plaintiff has no "glimmer of hope" of success on its fraud claim against Novation.  *Hartley*, 187 F.3d at 426.  Accordingly, that defendant will be dismissed as fraudulently joined.  Upon its dismissal, the court may exercise jurisdiction to consider the other pending motions.

### III. Motions to Dismiss

#### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P.

8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, Iqbal, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to

relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Plaintiff's allegations of fraud against Deutsche Bank are subject to a heightened pleading standard under Rule 9(b). *Harrison*, 176 F.3d at 783-84.[3] Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against

---

[3] Plaintiff's negligent misrepresentation claims are not subject to the Rule 9(b) standard. *See Baltimore County v. Cigna Healthcare*, 238 Fed.Appx. 914, 921 (4th Cir. 2007) (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCooopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005)).

11

frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation. *See Harrison*, 176 F.3d at 784.

**B.  Fraud**

Plaintiff's claim of fraud against Deutsche Bank fails for the same reason as the claim against Novation: Deutsche Bank did not originate the loan. The fraudulent conduct alleged by Plaintiff relates entirely to the alteration of her original loan application to reflect that she was purchasing the Property as her principal residence rather than for investment purposes. Under Plaintiff's theory, if the application had not been altered, she would not have been approved for the loan in question and, consequently, would not have defaulted and lost the Property in foreclosure. According to the complaint, however, Deutsche Bank did not acquire the loan until December 21, 2009, well after it was in default. (ECF No. 2 ¶ 16). Plaintiff suggests in her opposition to Deutsche Bank's motion that she seeks to hold this defendant liable as the successor in interest of Novastar Mortgage (ECF No. 24-1, at 4-5), but this distinction finds no support in the complaint. Moreover, Plaintiff has pointed to no legal authority supporting liability under these circumstances, nor is the court aware of any. Accordingly, her fraud claim against Deutsche Bank is subject to dismissal.

**C. Negligent Misrepresentation**

Plaintiff also alleges negligent misrepresentation against Saxon and Ocwen – the servicers of the loan at different times – and Deutsche Bank – apparently, under an agency theory – based on the servicers' assurances that they "would work with her to modify the loan so that she would be able to retain the Property and it would not be foreclosed upon." (ECF No. 2 ¶ 19). Defendants contend that these claims are subject to dismissal because they did not owe a tort duty to Plaintiff, which is an essential element of negligent misrepresentation under Maryland law.

As Judge Russell explained in *Spaulding v. Wells Fargo Bank, N.A.*, Civ. No. GLR-11-2733, 2012 WL 3025116, at *4-5 (D.Md. July 23, 2012):

> Counts II (negligence) and IV (negligent misrepresentation) of Plaintiffs' Complaint must fail because Wells Fargo did not owe Plaintiffs a tort duty. In Maryland, causes of action based on negligence or negligent misrepresentation require the plaintiff to prove a duty owed to them. *Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 515 A.2d 756, 758 (Md. 1986). Plaintiffs cannot, therefore, allege actionable claims of negligence and negligent misrepresentation without first demonstrating Wells Fargo owed them a duty in tort. *Id.* ("Absent a duty of care there can be no liability in negligence.") (citations omitted); *Parker v. Columbia Bank*, 91 Md.App. 346, 604 A.2d 521, 531 (Md.Ct.Spec.App. 1992) ("In order to state a cause of action as to . . . negligent

> misrepresentation, [and] negligence . . . the [plaintiffs] must demonstrate a duty owed to them by [the defendants].") (citations omitted).
>
> It is well established in Maryland that the relationship between the bank and borrower is contractual, not fiduciary, in nature. *Yousef v. Trustbank Sav., F.S.B.*, 81 Md.App. 527, 568 A.2d 1134, 1138 (Md.Ct.Spec.App. 990). Moreover, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." Jacques, 515 A.2d at 759. In cases involving economic loss, the imposition of tort liability requires "an intimate nexus between the parties" that is satisfied by "contractual privity or its equivalent." *Id*. at 759–60. Absent special circumstances, the court is reluctant to "transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker*, 604 A.2d at 532 (citations omitted).

*See also Green v. Wells Fargo Bank, N.A.*, --- F.Supp.2d ----, 2013 WL 766196, at *7 (D.Md. Feb. 27, 2013) (finding communications between the plaintiffs and lender regarding loan modification "did not create an enforceable contract with Defendant, nor was there otherwise a nexus between the parties sufficient to impose a tort duty," citing *Spaulding* and related cases).

In opposing Defendants' motions to dismiss, Plaintiff asserts, "[i]n recent years, Maryland courts have increasingly

14

found that sufficient privity exists between a bank or financial institution and a customer to establish a duty by the bank to its customer so that the customer may rely on representations and promises made by the bank." (ECF No. 24-1, at 6). The cases she cites in support, however, are readily distinguishable.

In *Dwoskin v. Bank of America*, 850 F.Supp.2d 557, 562 (D.Md. 2012), the plaintiffs alleged that, in accepting the bank's approval of their loan, they relied on a promise that "their loan was truly no fee and that no PMI [private mortgage insurance] would be required." When the plaintiffs later attempted to refinance their mortgage, they learned that the bank "had paid for LPMI [lender-paid mortgage insurance] on their home without their knowledge or consent" and, consequently, "they were unable to qualify for refinancing[.]" *Id*. at 563. Under those circumstances, the court found, "the Bank can fairly be said to have a duty to give correct information, as it had knowledge the information was desired for a serious purpose, that potential borrowers would rely on it, and that if the information was false these borrowers would be injured." *Id*. at 572.

Plaintiff also cites *Cooper v. Berkshire Life Ins. Co.*, 148 Md.App. 41, 51 (2002), which involved claims of negligent misrepresentation against an insurance company whose

15

representatives induced the plaintiff to purchase a life insurance policy based on a "sales illustration" suggesting that "a $1 million policy would cost only $9,000 a year for nine years." Regarding the illustration, the court distinguished "between a promise of future events and an estimate by one knowledgeable in a particular field," noting that "courts have been increasingly willing to hold predictive statements material where the circumstances indicate to the addressee that the speaker has a factual basis for his predictions so that the existence of facts is implied by the representations." *Cooper*, 148 Md.App. at 73-74 (quoting *Ward Dev. Co. v. Ingrao*, 63 Md.App. 645, 656 (1985)) (internal emphasis omitted). Finding that the plaintiffs were "entitled to assume that the projections made by [the defendants] . . . had some basis in fact that made them realistic," the court determined that a negligent misrepresentation claim was viable. *Id*. at 75.

Finally, Plaintiff relies on *Giant Food, Inc. v. Ice King, Inc.*, 74 Md.App. 183 (1988), a case involving negligent misrepresentations during negotiations over a contract that never materialized. As the Court of Special Appeals of Maryland later summarized:

> Giant's representations about its commitment to buy ice from Ice King included very specific terms: "the type, price, quality, and quantity of ice;" "the delivery terms;" "the location of Ice King's plant at a site

16

> most suitable to Giant;" "the size of the storage facility needed to satisfy Giant's demand;" "arrangements for inspection of Ice King's plant by Giant representatives;" and "the demand by Giant that Ice King supply further samples of ice and a certificate of insurance." *Id.* at 191, 536 A.2d 1182.

*First Union Nat. Bank v. Steele Software Systems Corp.*, 154 Md.App. 97, 164-65 (2003).

Here, by contrast, Plaintiff alleges that she merely made contact with the servicers about a loan modification after default; that the servicers advised that they would "work with her" to modify the loan; and that, in purported reliance on those statements, she "invested over $60,000 . . . to improve the Property," which she subsequently lost when the Property was sold at a foreclosure sale. (ECF No. 2 ¶ 19). The complaint does not reflect that an application for a loan modification was ever presented or that any representation was made by Defendants with respect to such an application. Unlike the parties in *Dwoskin*, there was no contractual privity with respect to the operative transaction. *See Green*, 2013 Wl 766196, at *7 ("Plaintiffs' allegations relate to . . . their request for loan modification, which was an entirely different transaction [than the underlying mortgage]") (citing *Neal v. Residential Credit Solutions, Inc.*, Civ. No. JKB-11-3707, 2013 WL 428675, at *6 (D.Md. Feb. 1, 2013) ("Although it is true the Neals had contractual privity with RCS by virtue of their original

17

mortgage, that does not govern whether RCS owed the Neals a duty of care in the processing of their loan modification application.")). Plaintiff has not identified any predictive representation made by Defendants similar to the illustration at issue in *Cooper*. *See Bierman v. United Farm Family Ins. Co.*, Civ. No. RDB-12-2445, 2013 WL 1897781, at *6 (D.Md. May 6, 2013) (distinguishing *Cooper*, where "the plaintiff specifically detailed the insurance company's statements that misled him into buying the insurance policy," from a case in which the plaintiffs "neglect[ed] to offer any facts illustrating Farm Family's allegedly incorrect statements"); *see also Mayor and City Council of Baltimore v. Unisys Corp.*, Civ. No. 12-614-JKB, 2012 WL 3561850, at *3 (D.Md. Aug. 16, 2012) (characterizing *Cooper* as "an analysis specific to the purchase of life insurance"). Moreover, unlike *Giant Food*, Plaintiff has not set forth any detail as to the context or substance of her conversations with the servicers that could give rise to a special relationship between the parties. *See Remsburg v. Montgomery*, 376 Md. 568, 589 n.9 (2003) (finding *Giant Food* "factually inapposite and inapplicable" for similar reasons).

Even if Plaintiff were able to establish that Defendants owed her a duty of care, she could not make out a negligent misrepresentation claim on these facts. To state a claim for

18

negligent misrepresentation under Maryland law, the plaintiff must show:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Dwoskin*, 850 F.Supp.2d at 571. Assuming, *arguendo*, the existence of a duty, Defendants could not have foreseen that simply advising Plaintiff that they would "work with" her to modify the loan would compel her to invest "over $60,000" in improvements to her property, particularly when the loan was in default and a foreclosure action was pending. Under these circumstances, the damages allegedly suffered by Plaintiff could not have been "proximately caused by the defendant's negligence." Accordingly, Plaintiff's negligent misrepresentation claims against Saxon, Ocwen, and Deutsche Bank must be dismissed.

## IV. Conclusion

For the foregoing reasons, Novation will be dismissed as fraudulently joined and the motions to dismiss filed by Deutsche

Bank, Ocwen, and Saxon will be granted.  A separate order will follow.

                                                   _____/s/_____
                                                   DEBORAH K. CHASANOW
                                                   United States District Judge